Ranney, J.
We shall attempt to decide but a single question, 472] All else involved in the case is matter of detail, *and can be-better settled in the district court. Barr, being the owner of certain lands in the town of Portsmouth, gave to the defendant, Tracy, a power of attorney to sell and convey them. Before the 19th of January, 1846, Tracy had sold and conveyed certain portions of the property, and had contracted with several persons for the sale of certain other portions. Barr, being indebted to the trustees of Mrs. Kneeland in the sum of $6,000, for the purpose of securing the debt, on that day assigned to them all the property, notes, and mortgages in the hands of Tracy; but this assignment has never been acknowledged or recorded. Tracy continued to sell other portions of the property, until about February 8, 1848, when Barr, being indebted to the complainant in a large amount, for the purpose of securing the sum of $10,000, assigned to him all the property, notes, and claims covered by the assignment to Mrs. Knee-land, with an inconsiderable exception, which is claimed to have-been omitted by mistake; but this assignment was never acknowledged or recorded.
Barr was also indebted to Peter J. Nevins & Sons, for which judgments were rendered by the Superior Court of Cincinnati, on which the plaintiffs issued executions, and caused them to be levied on-, the unsold portion of these lands, on the 18th of March, 1848 ; and on the 28th of April, 1849, bid them off at sheriff’s sale, with full notice, as is claimed, of the assignments to Mrs. Kneeland, and the-complainant.
The question is, are these equitable assignments to be preferred to the levy and sale under the judgments of Nevins & Sons ?
If any question can be treated as settled by an unbroken current-of judicial decisions, covering a period of more than ten years, and notwithstanding the constant changes upon the bench, made at all times without a dissenting voice, it seems to us that this should now be so regarded. In Stansell v. Roberts, 13 Ohio, 148, the contest arose between two mortgages, and the court held, C. J. Lane deliv-473] ering *the opinion, that the lien of the second mortgage, being first recorded, should be preferred, notwithstanding the mortgagee had actual notice of the first. In Mayham v. Coombs, 14 Ohio, 428, the same decision was made, and the reasons for it assigned at length by Judge Hitchcock. At the same term, in Jackson v. Luce, 14 Ohio, 514, the lien of a judgment by confession, *474 entered after the mortgage was recorded, on the second day of the term, was carried back, by relation, to the first day, and preferred to the mortgage.
In White v. Denman, 16 Ohio, 59, the mortgage, although recorded, was defectively executed, and a junior judgment lien was preferred. Birchard, C. J., in delivering the opinion, concedes that it ought to be treated between the parties as a valid, equitable mortgage; but as no legal estate had passed, the judgment creditor having equal equity, and a better legal claim, coiild not be displaced.
In the case of Holliday v. The Franklin Bank of Columbus, 16 Ohio, 533, the same principles are enforced with much clearness and force by Read, J.
A bill of review was filed in the case of White v. Denman, which was finally, by the unanimous judgment of this court, dismissed at the 3 anuary term, A. d. 1853. 1 Ohio St. 110. Our reasons for adhering to the decisions made by our predecessors are there fully stated, and need not be repeated.
It is to be observed that all these decisions were made under the act of February 22, 1831, to provide for the proof, acknowledgment, and recording of deeds and other instruments of writing; and all are made to depend entirely upon the construction to be put upon the 7th section of that act, which provides “that all mortgages executed agreeably to the provisions of this act, shall be recorded in the office of the recorder of the county in which such mortgaged premises are situated, and shall take effect from the time the same are recorded.” Before that time, no such provision had been incorporated into our statutes; but mortgages were allowed to be recorded in the same time as absolute deeds. Of*course, [474 judicial decisions made upon mortgages executed under prior laws, have no relation whatever to the question.
In all the eases to which I have referred, the general rules were pressed upon the court, that such an unrecorded mortgage created, at least, an equity between the parties, which would be held good as against a subsequent mortgage with notice of such equity, and ' that a judgment creditor took a lien only upon such interest as his debtor had when the judgment was rendered, and was bound by all the equities that could be asserted against the debtor. The court, in Holliday v. The Franklin Bank, admit that “this would be the result, if we reasoned upon the ordinary doctrine governing equities,” but this conclusion is disturbed by the statute, which steps in and *475 declares, in such case, that mortgages shall take effect and have precedence from the time of delivery for record. The court has declared, therefore, that they shall have no effect, either in law or equity, before such delivery.” They have regarded the statute as designed to “ put at rest all the vexed questions as to precedence, and to enable all persons certainly to know whether the property of persons to whom they extend credit is incumbered or not, without being involved in the vexed questions of prior equities and notice.”. That it was competent for the legislature so to declare, no one will doubt; that it has so declared, the highest court in the state has again and again decided. Upon the faith of this, men have dealt, and property has changed hands, until it is now alto- . gether too late to think of returning to a construction, which would have the effect of overturning so many transactions. That the court truly interpreted the legislative will, may be very properly assumed, from the fact that this course of decision has been left undisturbed by that‘body for so long a period of time, and from the very noticeable circumstance, that immediately after the decision of the case of Jackson v. Lee, the matter was brought to their attention, and a most palpable injustice corrected without any attempt to change the general doctrine. As, however, these decisions have all been 475] *made at the instance and to protect the interests of third persons; and as the whole object and policy of the recording act was designed for their benefit, we have felt at liberty, at the present term, to restrict, somewhat, the general language used in some of the cases, or rather to apply it strictly to the facts involved in these cases, and to hold that such unrecorded instruments are good and effectual between the parties; but entirely nugatory as to third parties, both at law and in equity, until they are recorded.
This opinion will be certified to the district court, and the cause remanded for final decree.